**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
LEWIS T. BABCOCK, CHIEF JUDGE**

Civil Case No. 04-cv-01465-LTB-PAC

HEALTH GRADES, INC., a Colorado Corporation,
    Plaintiff,

v.

DECATUR MEMORIAL HOSPITAL, an Illinois not-for-profit corporation,
    Defendant.

_____

**ORDER**
_____

Plaintiff Health Grades Inc., ("Health Grades") a Colorado Corporation, brings this action for copyright infringement, trademark infringement and breach of contract against defendant Decatur Memorial Hospital ("Decatur"), an Illinois not-for-profit corporation. Decatur moves to dismiss Health Grades' amended complaint for lack of personal jurisdiction and for improper venue, under Fed.R.Civ.P. 12(b)(2). Decatur's motion to dismiss supersedes an earlier motion to dismiss filed in response to Decatur's first complaint. For the reasons stated below defendant's motion to dismiss is GRANTED.

**I. Background**

Health Grades is a Colorado Corporation that publishes ratings of physicians, hospitals and other health care providers on its website. Health Grades possesses a registered copyright on this information. Health Grades makes this information available on its website through a click-through licensing agreement. Potential users must agree to the terms of use (the "User Agreement") before they can access the information. The User Agreement includes a provision

that states: "We (Health Grades) grant you a personal, revocable, nonexclusive license to access and view this site and the Site materials, solely for your non-commercial use and not for the resale or distribution to anyone else. . . " (Plaintiff's Amended Complaint Exhibit 1, Health Grades Web Site User Agreement, ¶ 4.) The Agreement also states that "Any action to enforce this User Agreement will be brought in the federal or state courts presiding in Denver, Colorado, U.S.A., and both parties expressly agree to be subject to the jurisdiction of such courts." (User Agreement, ¶ 18.) Health Grades also allows this information to be used for commercial purposes, but only under a distinct licensing agreement that requires the users to pay for the information. (Sugintas Aff. ¶ 3.)

Decatur is a single not-for-profit hospital located in Decatur, Illinois. It has no offices in Colorado, has no employees in Colorado and draws its patients mainly from Illinois. It sells no products or services to Colorado consumers. (Smithmier Aff. ¶¶ 2, 4).

The relationship between Decatur and Health Grades began in 2003, when Dr. Nora Sugintas, Vice President of Health Grades, was contacted by Dr. Michael Zia of Decatur.(Sugintas Aff. ¶ 2.) Zia inquired about Health Grades' ratings of Decatur and the price for Decatur using that information publicly. *Id.* Sugintas responded by email informing Zia that Decatur received "5 star" ratings in all six subcategories of orthopedic services, was ranked #1 in Illinois for Orthopedic Services overall, and was listed among the top 5% for orthopedic services nationwide. (Sugintas email, Exhibit 1 to Sugintas Aff.) Sugintas explained that "The aforementioned information may be utilized only with a signed and executed Health Grades agreement." *Id.* Sugintas then goes on to explain several options for this agreement, ranging in price from $25,000 to $11,500, and which also include marketing and other services. *Id.* Zia

responded with a short email October 2, 2003 stating that he would "pass this along to our COO." (Zia email, October 2, 2003.) In response to repeated phone calls from Sugintas, Decatur informed her October 15, 2003 that it was not interested in a Licensing Agreement. (Sugintas Aff., ¶ 4.)  Both parties agree that although Sugintas sent Decatur a draft contract whereby Decatur could publicly use the Health Grades information, Decatur did not sign this agreement. (Dodge letter, January 2, 2004).

In late 2003, Decatur CEO Kenneth L Smithmier wrote an article, later posted on the Decatur website, titled, "Don't Believe Everything you Read." (Smithmier Aff. ¶ 5). The article described the Health Grades rating system, the high rating Decatur received and stated that Decatur would not pay the $25,000 Health Grades required to publicize Decatur's ratings. The article states that Health Grades "analyze(s) hospital 'performance' in secret ways using secret data." The article also states that "We have been solicited by (Health Grades) for various five star rankings and have refused to pay their fees." The article refers to Health Grades' rating of Decatur as ". . . ranked #1 in the state of Illinois for orthopedic services overall."  (Smithmier Aff. Ex. A.) On January 2, 2004 Allen Dodge, Senior Vice President of Health Grades wrote a letter to Smithmier stating that the article was defamatory and publicized information in violation of Health Grades licensing agreement. (Smithmier Aff. ¶ 6.) Dodge refers to the correspondence with Sugintas, pointing out that her email clearly stated that Health Grades ratings cannot be used without a licensing agreement.(Smithmier Aff. Ex. B.)  Dodge goes on to demand that Smithmier remove the letter from the Decatur website and informs Smithmier that Health Grades is pursuing legal remedies. *Id.*

Health Grades filed its first complaint in July 2004, alleging infringement of copyright

and breach of contract. On December 3, 2004 an email apparently sent by an official at Decatur Memorial Hospital reports on a favorable 2005 Health Grade ratings for Decatur. (Wethington Aff. ¶ 13.) The email was sent to several staff at Decatur and apparently to other individuals as well. *Id.* The email includes a link to the Health Grade ratings. *Id.* According to an affidavit of Michael Wethington, Senior Database Administrator of Health Grades, the URL attached to the email can only be accessed if the user agrees to the terms of the User Agreement, indicating that the sender of the email had accessed the ratings and accepted the terms of the User Agreement. *Id.* On December 10, 2004 Health Grades filed an amended complaint, which added a claim for infringement of trademark and which cited this email as additional evidence of infringement of copyright.

## II.  Standard for Personal Jurisdiction

In federal question cases where the federal statute does not confer nation-wide service of process, personal jurisdiction is based on the law of the forum state. *Impact Productions, Inc., v. Impact Productions, LLC.,* 341 F. Supp.2d 1186, 1189 (D. Colo. 2004). In Colorado, jurisdiction is governed by the state's Long Arm Statute, C.R.S. § 13-1-124, which extends to the full extent of the due process clause. *Waterval v. District Court in and For El Paso County*, 620 P.2d 5, 8 (Colo. 1980).  So my only concern is whether allowing jurisdiction in Colorado offends due process. *Kuenzle v. HTM Sport-Und Freizeitherate AG,* 102 F. 3d 453, 455 (10th Cir. 1996).

Personal jurisdiction is proper under the fourteenth amendment if a nonresident defendant has certain minimum contacts with [the forum] such that maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe CO. v. Washington,* 326 U.S. 310, 316 (1945). The minimum contacts standard may be satisfied in

either of two ways. First, a court may exercise specific jurisdiction if a defendant has "purposefully directed his activities at residents of the forum and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472 (1985). Also, a defendant's "activities within the jurisdiction must render it foreseeable that the party should reasonably anticipate being haled into the forum court." *In re application to Enforce v. Knowles*, 87 F.3d 413, 417 (10th Cir. 1996.)

Second, a court may exercise general jurisdiction where the defendant's contacts with the forum state, while not rising to the level of traditional notions of presence in the forum state are "continuous and systematic." *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 416 (1984). In this case, neither party appears to argue that there is general jurisdiction over Decatur.

Even if a defendant has sufficient minimum contacts to justify jurisdiction, the due process clause requires that I further consider whether the exercise of personal jurisdiction over defendant would offend traditional notions of fair play and substantial justice. *Intercon*, *Inc. v. Bell Atlantic Internet Solutions, Inc.,* 205 F.3d 1244, 1247 (10th Cir. 2000). In determining if jurisdiction offends these principles, I consider the following factors: (1) the burden on the defendant; (2) the forum state's interest in resolving the dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Asahi Metal Industry Co. v. Superior Court of California, Solano County,* 480 U.S. 102, 113 (1987).

The plaintiff bears the burden of establishing personal jurisdiction over the defendant.

*See Far West Capital, Inc., v. Towne,* 46 F.3d 1071, 1075 (10th Cir. 1995). When the issue is raised before trial and decided on the basis of affidavits and other written materials, a plaintiff need only make a prima facie showing. *Id.* I must resolve all disputed facts and draw all reasonable inferences in the plaintiff's favor. *Id.* However, "only the well pled facts of plaintiff's complaint, as distinguished from mere conclusory allegations, must be accepted as true." *Wenz v. Memery Crystal,* 55 F.3d 1503,1505 (10th Cir. 1995.)

### III.   Personal Jurisdiction

Health Grades asserts that specific jurisdiction over Decatur in Colorado is appropriate for two reasons. First, Health Grades argues that Decatur's misuse of Health Grades' information constitutes purposeful availment of the laws of Colorado under the "effects test" of *Calder v. Jones*, 465 U.S. 783 (1984). Second, Health Grades contends that Decatur consented to the jurisdiction of the Colorado courts when its employees signed the User Agreement on Health Grades' website. I address these arguments in turn.

A.   Purposeful Availment.

Health Grades argues that Decatur knowingly violated Health Grades' copyright, and that such a violation is sufficient to confer Colorado jurisdiction because the bulk of the harm caused by Decatur's action was felt in the forum state. Health Grades invokes the doctrine of the "effects test" established in *Calder v. Jones.* To make a prima facie case under this doctrine, Health Grades must show that Decatur 1) engaged in intentional actions 2) expressly aimed at the forum state 3) causing harm the brunt of which is suffered – and which defendant knew was likely to be suffered – in the forum state. *Impact Productions Inc., supra,* 341 F.Supp.2d at 1190. Health Grades asserts that Decatur published information on its website without a license from

Health Grades, knowing it needed such a license to publish this information and knowing that Health Grades was a Colorado corporation.

I find that these facts, assumed to be true, are insufficient to confer jurisdiction in Colorado because they do not constitute actions expressly aimed at Colorado.  Health Grades published its information in Illinois, and then posted an article on a passive website located in Illinois aimed at Decatur's existing and potential consumers. Health Grades has alleged no facts that suggest that this posting was aimed at Colorado, nor has Health Grades offered any other allegations beyond this posting that Decatur's allegedly tortious conduct was aimed at Colorado. "The mere allegation that an out-of-state defendant has (committed) business torts that have allegedly injured a forum resident does not necessarily establish that the defendant possesses the constitutionally required minimum contacts." *Far West Capital*, *supra,* 46 F.3d at 1079. Jurisdiction requires additional evidence of contacts with the forum state in committing the alleged tort. *Id* at 1079-1080.  Here, no such additional evidence exists.  "*Calder* did not carve out a special intentional tort exception to the traditional jurisdictional analysis, so that a plaintiff could always sue in his or her home state." *Impact Prods, supra,* 341 F.Supp.2d at 1191. [*Quoting IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 265 (3d Cir. 1998).]

Health Grades contends that the knowing violation of a patent, copyright or trademark right of a forum state resident, especially via the internet, is sufficient to establish jurisdiction over defendant in the forum state. However, the authority Health Grades cites does not support this proposition. In *Cybersell Inc., v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir. 1997), defendant's passive website posting alleged to violate plaintiff's trademark did not constitute, by itself, sufficient evidence of reaching out to the forum state to confer jurisdiction. *Id.* at 419. Similarly,

in *Panavision Int'l L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir. 1997), registering a trademark as a domain name and posting it on a website did not confer jurisdiction without "something more" to show defendant directed his actions at the forum state. *Id.* at 1322. In *Panavision*, the "something more" consisted of a scheme to register domain names for the specific purpose of extorting the plaintiff. *Id.* Health Grades alleges nothing similar in this case.

Decatur's actions were in Illinois. The impact of these acts on Health Grades in Colorado, simply because Health Grades is based in Colorado, is not sufficient to confer jurisdiction.

B.   User Agreement.

Health Grades also asserts that Decatur consented to Colorado jurisdiction when it accepted the User Agreement with Health Grades. Health Grades contends, and Decatur does not contest, that the click-through User Agreement includes a valid acceptance of jurisdiction in Colorado courts for any lawsuits brought under the Agreement. Rather, Decatur argues that Health Grades has not alleged sufficient facts to show that Decatur ever agreed to the terms of the User Agreement.

Health Grades contends, first, that its ratings appeared in the article published in late 2003, and that its website recorded numerous "hits" from an Internet Protocol ("IP") address of 207.0.246.194 between September 27, 2001 and December 3, 2004. (Wethington Aff. ¶ 12.) These hits record, among other things, instances when a user agrees to the terms of the user agreement. (Wethington Aff. ¶ 11.) Health Grades states, and Decatur does not contest, that this IP address varies by only one digit from the IP address of the Decatur website (207.0.246.195) and both websites are hosted by Hanson Information Services in Springfield Illinois.

(Wethington Aff. ¶ 12.)  Health Grades argues that this evidence of internet activity shows that Decatur agreed to the User Agreement, thereby agreeing to Colorado jurisdiction.

Decatur responds that these allegations, assumed to be true, are insufficient to justify Colorado jurisdiction. Decatur states that the information in the article was provided to Decatur directly in the Sugintas email, and so cannot be circumstantial evidence to show that Decatur obtained the information from Health Grades' website and accepted the User Agreement. Decatur also argues that Health Grades has failed to link the website hits to Decatur, because internet hits from a similar IP address originating from the same Internet Service Provider (ISP) are insufficient to show that Decatur agreed to the terms of the User Agreement.

More important, Decatur contends that even if these instances of internet access of the Health Grades information did originate from Decatur employees, a fact for which Health Grades has no direct evidence, Health Grades has not alleged any fact that shows that these actions are attributable to Decatur the corporation. Decatur asserts that Health Grades has alleged no facts that suggest that these internet hits were authorized by Decatur or that these individual senders were the agents of Decatur.

Health Grades argues that Decatur's denial that the IP address belongs to Decatur and that these internet hits were authorized by Decatur, is insufficient grounds to reject jurisdiction absent allowing discovery to ascertain the precise identity of this IP address and to determine if these employees in fact acted on behalf of Decatur. Moreover, Health Grades argues that a corporation gives an employee apparent authority to act on its behalf when it gives the employee access to telephones and computer equipment. In this way, the employees who accessed the Health Grades website were acting for Decatur.

For the purposes of a motion to dismiss I accept all facts as alleged by plaintiff as true and I resolve factual disputes in favor of plaintiff. I also make all reasonable inferences from plaintiff's facts, but I do not accept plaintiff's mere conclusory allegations as true. *Wenz, supra,* 55 F.3d at 1505.  Here, Health Grades would have me infer that internet hits from similar IP addresses originating from the same Internet Service Provider are sufficient to show that Decatur employees accessed the Health Grades website. The affidavit from Health Grades Senior Database Administrator, Michael Wethington, recounts the facts of the internet hits and states that this evidence shows that the IP address "clearly belongs" to Decatur. (Wethington Aff. ¶ 12.) This conclusory statement without adequate basis fails to support a reasonable inference favorable to Health Grades.

However, even granting that Decatur employees agreed to the User Agreement, Health Grades has not demonstrated that these acts bind Decatur as a corporation. In order for an employee's action to bind a corporation, the employee must act with either actual or apparent authority.

Actual authority exists when the principal and agent agree, through written or verbal agreement or by conduct, that the agent may act for the principal. *Willey v. Mayer,* 876 P.2d 1260, 1264 (Colo. 1994). The principal may act in a manner that causes the agent to believe that the principal desires him to act on the principal's behalf. *Id.* Actual authority may also consist of authority that is incidental to, or is necessary in order to accomplish the main authority conferred by the principal. *Id.*  Health Grades has alleged no facts here to suggest that the emails were sent by individuals acting with actual authority to bind Decatur to the terms of the User Agreement.

Under the doctrine of apparent authority, "a principal is liable for an agent's actions

10

when the principal, through his words or conduct, causes a third party to believe that the principal authorized the agent's actions." *Finnie v. Jefferson County School Dist. R-1,* 79 P.3d 1253, 1255 (Colo. 2003.) "An agent's (apparent) authority to act cannot be established solely from the agent's actions; the authority must be established by an act of the principal." *Pytlik v. Professional Resources Ltd.,* 887 F.2d 1371, 1376 (10th Cir. 1989). An essential element of apparent authority is a third party relying on the agent acting with the principal's authority. *See. Lucero v. Goldberger,* 804 P.2d 206, 209 (Colo. Ct. App.1990).

Health Grades argues that the email hits on its website were the acts of agents of Decatur acting with apparent authority to bind Decatur. I disagree. Health Grades offers nothing suggesting that these employees (if they were employees) represented themselves as agents for Decatur, that Decatur represented to Health Grades that these employees were Decatur agents or that Health Grades relied on such a representation. These hits, alone, are insufficient to show that Decatur agreed to the terms of the User Agreement establishing jurisdiction in Colorado.

Health Grades contends that the mere fact that Decatur provided its employees with access to company computers and email is sufficient to confer agency status. However, the cases Health Grades cites do not support this proposition. In *Oriental Commercial and Shipping Co., Ltd. v. Roseel, N.V.,* 702 F. Supp. 1005, 1015 (S.D.N.Y. 1988), the court found one company to be an agent for its parent based on numerous indicia of agency including providing its agent with brochures, sharing an office, using the same telex and phone number and using the same logo and because the main purpose of the agent corporation was to solicit business for the principal. *Id.* at 1016. That case specifically held that the parent corporation gave third parties reason to believe that the agent was acting on its behalf. *Id.* at 1015.

Similarly, in *First National Bank of Chicago v. Shearson Lehman Brothers Inc.,* 1989 WL 165009, p. 7 (N.D. Ill.) the court found that a third party could reasonably conclude that an employee acted as an agent for his corporation when the corporation gave him the title of vice-president, provided him with an office, a phone, company letterhead and other "trappings" of the corporation. *Id.*   In *Denten v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 887 F. Supp. 176, 179 (N.D.Ill. 1995) the court found an agent/employee acted with apparent authority when a 20-year employee had the title of Executive Vice President and had an office, telephone and letterhead furnished by the company. There also was extensive personal interaction between plaintiff and the alleged agent. *Id.*   In *Shaw v. Shaw,* 1994 WL 16014349 (M.D.Fla., 1994) and in *Yohay v. City of Alexandria Employees Credit Union, Inc.,* 827 F.2d 967 (4th Cir. 1987)  the court found that a company could be liable for the acts of an employee accessing a company computer, but only if a "third party reasonably relied upon the principal's representations which created apparent authority."  *Id.* at 973.

None of these cases support Health Grade's proposition that the individuals who accessed Health Grade's website were acting as agents to bind Decatur. Health Grades does not know the names or titles of the senders of these emails. It has no relationship with the senders. The senders' interaction with Health Grades contain none of the indicia of agency that the cases above rely on. It is not even clear that Health Grades was aware of these particular hits, or their originating IP address, until it did an audit for the purposes of this litigation. Health Grades does not offer any evidence that it, or any third party, understood these emails to be communications from Decatur, a necessary element in the two internet cases Health Grades cites. In sum, the numerous email hits described in the affidavit, even assuming these to be from Decatur

employees, are insufficient to bind Decatur to the terms of the User Agreement and thus cannot confer jurisdiction.

Health Grades also offers as evidence of Decatur's acceptance of the User Agreement a December 2004 email from Ron Meng with an email address of  RMENG@dmhhs.org. Wethington states in his affidavit that the URL attachment to this email shows that Meng accessed the ratings and therefore agreed to the terms of the User Agreement.(Wethington Aff. ¶ 13.)  Health Grades proffers no other information about the identity of Meng or his affiliation to or relationship with Decatur. This email then is insufficient to bind Decatur to the user agreement, for the same reasons as explained above. Health Grades proffers nothing to suggest that Meng had actual authority to bind Decatur, and does not allege any actions by Decatur that would lead a third party to believe Meng was acting as Decatur's agent. Nor does Health Grades allege that it relied upon Meng's agency relationship with Decatur to show apparent authority. In fact, Health Grades filed its initial complaint several months before this email was sent. This email cannot be the basis for Decatur's acceptance of the terms of the User Agreement and thus cannot justify jurisdiction.

C.    Fair Play and Substantial Justice.

Decatur argues that even if it is has minimum contacts with Colorado, jurisdiction in Colorado would be unreasonable and thus offend due process.  Decatur asserts, correctly, that due process prevents me from making Decatur defend itself in Colorado if I conclude that Colorado jurisdiction "offends traditional notions of fair play and substantial justice." *Intercon, supra,* 205 F.3d at 1247.  Put differently, even if there are minimum contacts, I cannot find jurisdiction if it would be unreasonable. *OMI Holdings, Inc. v. Royal Ins. CO. of Canada,* 149

F.3d 1086, 1091 (10th Cir. 1998). Moreover, the analysis of minimum contacts and reasonableness are inter-related; the weaker the defendant's minimum contacts are with the forum state, the less the defendant needs to show to demonstrate that jurisdiction would be unreasonable. *Benton v. Cameco Corp.,* 375 F.3d 1070, 1079 (10th Cir. 2004).

The Supreme Court has identified the following factors as important in evaluating whether jurisdiction is unfair to a defendant: (1) the burden on the defendant; (2) the forum state's interest in resolving this dispute; (3) the plaintiff's interest in receiving convenient and effective relief; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *See Asahi, supra,* 480 U.S. at 113.

I will analyze each of these factors.

1.      Burden on Defendant

"While not dispositive, the burden on the defendant of litigating the case in a foreign forum is of primary concern in determining the reasonableness of personal jurisdiction." *OMI Holdings, Inc., supra* 149 F.3d at 1096. In this case, Decatur's ties to Colorado are weak and tenuous. Decatur is an Illinois corporation with no connections to Colorado. It has no employees or offices in Colorado, few if any patients here and no presence here. Furthermore, this case does not involve an act by Decatur to reach into Colorado. Accordingly, this factor weighs against Colorado jurisdiction.

2.      Forum State's Interest in Resolving this Dispute

The issues at stake in this case are federal trademark and copyright statutes and a state breach of contract claim. Colorado has no particular interest in the federal law issues, and Health

Grades has not put forward any basis to believe that its state law claim cannot be resolved in Illinois. While the forum state always has an interest in providing a forum for its residents to adjudicate their claims, this argument is weaker here because this dispute does not arise out of a contact plaintiff made with Colorado. *See Burger King, supra,* 471 U.S. at 483.  Thus, this factor also weighs against jurisdiction.

        3.      Plaintiff's Interest in Receiving Convenient and Effective Relief

It is no doubt more convenient for Health Grades to file suit in Colorado. However, as discussed above, there is no apparent reason why Health Grades cannot obtain effective legal relief in Illinois. This factor tends to slightly favor Health Grades.

        4.      The Interstate Judicial System's Interest in Obtaining the Most Efficient Resolution of Controversies.

This factor requires analyzing whether the forum state is the most efficient place to litigate this dispute. *OMI Holdings, supra,* 149 F.3d at 1097. This inquiry turns on the location of witnesses, where the act that is the basis for the lawsuit took place, what forum's substantive law governs the case and preventing piecemeal litigation. *Id.* Applying these factors here, efficiency tends to marginally support Decatur. The bulk of the witnesses are likely to be in Illinois, since the essence of Health Grades' case will likely consist of establishing the actions of Decatur officials. The underlying act here was publishing an article in Illinois. For the federal law claims, choice of law issues are irrelevant, while for the contract claim Colorado law will likely apply. Litigating in Illinois does not appear to risk piecemeal litigation.

        5.      The shared interests of the several states in further fundamental substantive social policies.

This case does not appear to implicate any fundamental substantive social policies. So

this factor is not relevant to this case.

This analysis leads me to conclude that even if Decatur had the minimum contacts in Colorado to sustain personal jurisdiction, or if Decatur had agreed to the exercise of jurisdiction in Colorado by accepting the terms of the User Agreement, imposing Colorado jurisdiction on Decatur would be unfair and in violation of the protections of due process. This conclusion is reinforced by the fact that Decatur's minimum contacts with Colorado are weak and tenuous.

### IV.   Venue

Decatur also moves to dismiss for improper venue.  Venue is proper where a defendant resides, where a substantial part of the events or omissions giving rise to the claims occurred; or where the defendant is subject to personal jurisdiction. 28 U.S.C. § 1391(a). Here, defendant resides in Illinois and the alleged tortious act occurred in Illinois (publishing the information that allegedly constituted a trademark and copyright infringement).   I also have concluded that  there is no personal jurisdiction over Decatur in Colorado. Hence, venue is improper under 28 U.S.C. § 1391(a).

Plaintiff relies also on 28 U.S.C. § 1400, the statute governing venue over copyright actions, to establish venue. This statute states that venue is proper in copyright suits in "the district in which the defendant or his agent resides or may be found." 28 U.S.C. § 1400 (a). However, "may be found" essentially means subject to personal jurisdiction. *Electronic Realty Associates, L.P. v. Paramount,* 935 F. Supp. 1172, 1177 (D. Kan. 1996).  So venue is improper under this statute as well.

Therefore, It is So ORDERED :

      1.      Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED, and the above action is dismissed WITHOUT PREJUDICE; and

      2.      Defendant is awarded its costs.

**DONE and ORDERED,** this __1st__ day of September, 2005 at Denver, Colorado.

                                                                                          s/Lewis T. Babcock  
                                                                       United States District Chief Judge